Brian C Johnson, #3936
Brooke Johnson, #13761
STRONG & HANNI
102 South 200 East, Suite 800
Salt Lake City, UT 84111
Telephone: (801) 532-7080
Facsimile: (801) 596-1508

Jessica L. Grant (*Pro Hac Pending*)
VENABLE LLP
505 Montgomery Street, Suite 1400
San Francisco, CA 94111
Telephone:  (415) 653-3750
Facsimile:  (415) 653-3755

Tamany Vinson Bentz (*Pro Hac Pending*)
VENABLE LLP
2049 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 229-9900
Facsimile:  (310) 229-9901

*Attorneys for Defendants Univision Salt Lake City, LLC et al.*

---

## IN THE UNITED STATES DISTRICT COURT,

## IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ITN FLIX, LLC, a Utah limited liability company; and GIL MEDINA, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> UNIVISION HOLDINGS, INC., a New York Corporation; UNIVISION SALT LAKE CITY, LLC; UNIVISION COMMUNICATIONS, INC., a Delaware Corporation; and EL REY NETWORK, LLC, <br><br> Defendants. | **DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)** <br><br> **(ORAL ARGUMENT REQUESTED)** <br><br> Case No.: 2:15-cv-00736 CW <br><br> Judge Clark Waddoups |

## PRECISE RELIEF SOUGHT AND GROUNDS FOR MOTION

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Univision Salt Lake City, LLC, Univision Communications Inc., and El Rey Network, LLC (collectively, "Defendants") respectfully move to dismiss Plaintiffs ITN Flix, LLC and Gil Medina's ("Plaintiffs") First Amended Complaint with prejudice and without leave to amend, on the ground that Plaintiffs have failed to state a claim, and cannot state a claim, against Defendants for copyright infringement.

First, the sole basis of Plaintiffs' copyright infringement claim is that by broadcasting the movie "Machete" and its sequel "Machete Kills" (the "Machete Movies"), Defendants allegedly infringed on Plaintiffs' copyright in the film, "Vengeance."  However, in prior litigation, Plaintiffs conceded that their film "Vengeance" is *dissimilar* from the Machete Movies, and they therefore previously *disclaimed* any copyright infringement between the works at issue here. Since Defendants cannot, as a matter of law, be liable for broadcasting dissimilar, non-infringing films, Plaintiffs' copyright infringement claim must be dismissed with prejudice and without leave to amend.

Second, even if Plaintiffs are allowed to plead copyright infringement despite their earlier pleadings, their claim must be dismissed because they fail to allege sufficient facts to state a claim for copyright infringement.  They fail to plead that there are substantially similar protectable elements between "Vengeance" and the Machete Movies.  The omission of these allegations is not surprising in light of Plaintiffs' previous pleadings disclaiming any copyright claim.

Third, the First Amended Complaint also shows on its face that Plaintiffs' copyright infringement claim is time barred by the applicable three-year statute of limitations insofar as it is based on any activities prior to October 13, 2012.

Finally, absent direct evidence of copying, which Plaintiffs fail to adequately plead, Plaintiffs must establish that Defendants had access to "Vengeance." Their failure to allege any facts to show that Defendants ever had access to "Vengeance" is fatal to their copyright infringement claim.

This Motion is supported, *inter alia*, by Defendants' attached Memorandum in support of this Motion; the facts, authorities, arguments and evidence set forth in the referenced Memorandum; the Declaration of Tamany Vinson Bentz filed concurrently herewith; Defendants' Request for Judicial Notice filed concurrently herewith and all exhibits thereto; and such additional arguments, authorities, facts and evidence as the Defendants have submitted or may hereinafter submit orally or in writing in support of this Motion.

Pursuant to DUCivR 7-1(f), Defendants respectfully request oral argument on this Motion.

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................ vi

II.   FACTUAL BACKGROUND ........................................................... viii

      A.    The Parties ..................................................................... viii

      B.    The Subject Films ............................................................. ix

            1.    "Vengeance" ............................................................. ix

            2.    "Machete" and "Machete Kills" .................................. x

      C.    Prior Lawsuits Failing to Allege Copyright Infringement .................. xi

III.  LEGAL STANDARD .......................................................................... 1

IV.   THE FAC SHOULD BE DISMISSED WITH PREJUDICE BECAUSE DEFENDANTS
      CANNOT BE LIABLE FOR BROADCASTING A NON-INFRINGING MOVIE. ........ 2

V.    THE FAC SHOULD BE DISMISSED WITH PREJUDICE BECAUSE PLAINTIFFS
      CANNOT PLEAD A CLAIM FOR COPYRIGHT INFRINGEMENT............................. 4

      A.    Plaintiffs' Boilerplate Allegations of Substantial Similarities Fail to Meet the
            Basic Pleading Standards Under *Iqbal* and *Twombly*................................... 7

      B.    The Only Similarities Alleged Between "Vengeance" and "Machete" Constitute
            *Non*-Protectable Elements of the Works. .......................................... 8

            1.    The Fact that the Films are About Officers Who Take Vengeance on "Bad
                  Men" is Not Protectable............................................................ 8

            2.    Plaintiffs Cannot Establish Substantial Similarities by Merely Alleging
                  that Both Films Include a Scene "Between a Priest and Bad Man." ........ 11

            3.    Plaintiffs Cannot Claim Copyright Protection Over Danny Trejo............ 12

VI.   PLAINTIFFS' COPYRIGHT INFRINGEMENT CLAIM IS TIME-BARRED WITH
      RESPECT TO BROADCASTS OF THE MACHETE MOVIES AIRING PRIOR TO
      OCTOBER 12, 2012. .................................................................... 13

VII.  PLAINTIFFS COPYRIGHT INFRINGEMENT CLAIM SHOULD BE DISMISSED
      WITH PREJUDICE BECAUSE THEY DO NOT ALLEGE THAT DEFENDANTS
      HAD ACCESS TO "VENGEANCE." .............................................................. 15

VIII. THE FAC SHOULD BE DISMISSED WITH PREJUDICE. .......................... 18

IX.   CONCLUSION.................................................................................. 19

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) ............................................. 1

*Bell Atl. v. Twombly*, 550 U.S. 544, 555-57 (2007) ..................................................................... 1

*Bell v. Blaze Magazine,* No. 99 Civ. 12342, 2001 WL 262718, at *3 (S.D.N.Y. 2001) ............... 6

*Blehm v. Jacobs*, 702 F. 3d 1193, 1199 (10th Cir. 2012) ........................................................ 4, 15

*Bouchat v. Baltimore Ravens, Inc.*, 241 F.3d 350, 363 (4th Cir. 2001) ........................................ 17

*Burnett v. Mortgage Elec. Registration Sys.*, 706 F.3d 1231, 1235-36 (10th Cir. 2013) .............. 1

*Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 (10th Cir. 1996) ..................... 5, 6

*Denker v. Uhry*, 820 F. Supp. 722, 732 (S.D.N.Y. 1992) ........................................................... 12

*Diversey v. Schmidly*, 738 F.3d 1196, 1200 (10th Cir. 2013) ............................................... 13, 14

*Doody v. Penguin Group (USA) Inc.*, 673 F. Supp.2d 1144, 1156 (D. Haw. 2009) .................... 11

*E.J. Novak v. National Broadcasting Company*, 752 F. Supp. 164, 169 (S.D.N.Y. 1990) ......... 17

*Eastman v. Union Pac. R. Co.*, 493 F.3d 1151, 1153 (10th Cir. 2007) ......................................... 3

*Falotico v. WPVI-Channel 6*, 1989 WL 143238, at *4 (E.D. Pa. Nov. 22, 1989) ....................... 12

*Feder v. Videotrip Corp.*, 697 F. Supp. 1165, 1170-71 (D. Colo. 1988) .................................... 10

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 1296 (1991) . 4, 12

*Field v. GMAC LLC*, 660 F. Supp. 2d 679, 690-91 (E.D. Va. 2008) ......................................... 19

*Fisher v. United Feature Syndicate, Inc.*, 37 F. Supp. 2d 1213, 1218-19 (D. Colo. 1999) 4, 5, 6, 9, 10, 15, 17

*Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1077 (9th Cir. 2006) ......... 5, 8, 10

*Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 832, n.7 (10th Cir.1993) ............. 5, 6

*Gibson v. Pennsylvania Pub. Utilities Comm'n*, No. 1:15-CV-00855, 2015 WL 3952777, at *8 (M.D. Pa. June 18, 2015) ....................................................................................................... 19

*Hofmann v. Pressman Toy Corp.*, 790 F. Supp. 498, 509 (D.N.J. 1990) .................................... 15

*Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994) ......................... 6

*La Resolana Architects, PA v. Reno, Inc.,* 555 F.3d 1171, 1178 (10th Cir. 2009) (quoting *Gates Rubber Co.,* 9 F.3d at 832) ............................................................................................. 5, 15, 17

*Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) ................................... 18

*Lyles v. Capital-EMI Music Inc.*, No. 2:12-CV-00751, 2013 WL 6000991, at *4 (S.D. Ohio Nov. 12, 2013) ......................................................................................................................... 5, 10, 17

*Madrid v. Chronicle Books*, 209 F. Supp. 2d 1227, 1238 (D. Wyo. 2002) ............. 5, 6, 7, 8, 9, 10

*Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC,* 692 F.3d 983,986, 996 (9th Cir. 2012) 2

*Nichols v. Universal Pictures Corp.*, 45 F.2s 119, 121 (2nd Cir. 1930) ...................................... 13

*Papasan v. Allain*, 478 U.S. 265, 286 (1986) ............................................................................... 1

*Roley v. New World Pictures, Ltd.,* 19 F.3d 479, 481 (9th Cir.1994) ........................................... 13

*Schultz v. Krause*, No. CIV. S-11-1796 MCE, 2011 WL 6293939, at *4-5 (E.D. Cal. Dec. 13, 2011) .................................................................................................................................... 19

*Segal v. Rogue Pictures*, 544 Fed. Appx. 769, 770 (9th Cir. 2013) ............................................ 12

*Shame on You Productions v. Banks*, No. CV 14-03512, 2015 U.S. Dist. LEXIS 107450, at *89-90 (C.D. Cal. Aug. 14, 2015)........................................................................................ 13

*Sinicola v. Warner Bros., Inc.*, 948 F.Supp. 1176, 1190 (E.D.N.Y. 1996).................................. 11

*TransWestern Pub. Co. LP v. Multimedia Mktg. Associates, Inc.,* 133 F.3d 773, 777 (10th Cir. 1998).................................................................................................................................... 6

*Vantage Point, Inc. v. Parker Bros.*, 529 F. Supp. 1204, 1212 (E.D.N.Y. 1981)........................ 17

*Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50-51 (2d Cir. 1986) .......................................... 11

*Wild v. NBC Universal, Inc.*, 788 F. Supp. 2d 1083, 1098 (C.D. Cal. 2011) ......................... 5, 10

**Statutes**

17 U.S.C. § 507(b) ..................................................................................................................... 13, 14

**Rules**

Fed. R. Evid. 201(b)(2) ................................................................................................................. 16

**Treatises**

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.02[A], at 13–21 (2008)... 18

## I.   <u>INTRODUCTION</u>

Plaintiffs claim Defendants[1] infringed their copyrights by simply broadcasting the movie "Machete" and its sequel "Machete Kills" (collectively herein, the "Machete Movies") on their television networks or stations.  Plaintiffs do not allege, nor could they allege, that Defendants had any role whatsoever in making the Machete Movies.

First, it is worth noting that Plaintiffs have filed *two* prior lawsuits related to the films at issue that were dismissed by *two* different federal courts: this Court on June 14, 2014 (Case No. 1:13-cv-00022-RJS, Dkt. No. 146) and the Central District of California on May 13, 2015 (Case No. 2:14-CV-08797-ODW-RZ, Dkt. No. 75).[2]  In these prior lawsuits, Plaintiffs sued those that made the Machete Movies, but explicitly *disclaimed any copyright infringement claim* between the subject films, acknowledging that Plaintiffs' film, "Vengeance," was ***dissimilar** from the Machete Movies*.  Indeed, in those prior suits, Plaintiffs admitted that they expressly pitched "Vengeance" as a competitive alternative to "Machete Kills," describing "Vengeance" as Burger King and "Machete Kills" as McDonald's.

After both of Plaintiffs' prior suits regarding the subject films were dismissed, Plaintiffs are now trying to take a third bite at the apple.  After the failure of his claims against the producers and creators, Plaintiff Medina turned his attention to the broadcasters.  He commenced

---

[1] Univision Salt Lake City, LLC, Univision Communications Inc., and El Rey Network, LLC are collectively referred to herein as "Defendants."  Univision Holdings, Inc. has not been served.

[2] Defendants request that the Court take judicial notice of Case Nos. 1:13-cv-00022-RJS (D. Utah) and 2:14-CV-08797-ODW-RZ (C.D. Cal.), and allegations contained in the pleadings filed therein, on the basis that they are public filings and not subject to reasonable dispute.  Fed. R. Evid. 201(b)(2).  Defendants' Request for Judicial Notice ("RJN") is filed concurrently herewith.

a relentless campaign of harassment, including numerous calls and emails to Defendants' board members and executives, and Plaintiffs have now filed suit against the broadcasters. Of course, if the makers of the Machete Movies were not liable to Plaintiffs, then the broadcasters certainly cannot be held liable, no matter how many defendants Plaintiffs identify or what inconsistent theories Plaintiffs choose to pursue. Defendants here cannot be liable for copyright infringement for broadcasting movies that Plaintiffs have already conceded in prior litigation are *dissimilar* from "Vengeance" and do not infringe on that work.

As one would expect given Plaintiffs' concessions in prior litigation, the First Amended Complaint ("FAC") is devoid of any facts that give rise to an actionable claim for copyright infringement, which, as shown below, cannot be cured with leave to amend.

First, Plaintiffs have failed to plead that substantial similarities exist between the *protectable* elements of the films in question, as is required to plead a valid copyright infringement claim.

Second, the allegations of the FAC establish that any claims based on broadcasts of the Machete Movies prior to October 13, 2012, are time-barred by the applicable three-year statute of limitations. The FAC asserts that *by 2010*, Plaintiffs admittedly knew—or at the very least "had reason to know"—of Defendants' broadcasts, yet Plaintiffs filed this action *five years* thereafter.

Third, Plaintiffs fail to plead Defendants had access to "Vengeance," which is a basic element of any copyright infringement claim. Plaintiffs plead *that others besides the Defendants* purportedly had access to a rough cut of "Vengeance," but even if that were true, other

individuals' supposed access to a rough cut of the film cannot be imputed to Defendants. And, the meager allegations Plaintiffs assert *against others besides Defendants* still fail as a matter of law since the alleged access merely consisted of a rough cut and script for a film that was subsequently reworked and changed into "Vengeance."

 As noted above, this lawsuit is merely Plaintiffs' desperate attempt to resurrect legally deficient claims by asserting them against a new group of Defendants, even though none of them had any role whatsoever in creating the Machete Movies.  Because Plaintiffs have not, and cannot, plead any actionable copyright infringement claim against Defendants, their FAC should be dismissed with prejudice and without leave to amend.

## II.   <u>FACTUAL BACKGROUND</u>

### A.   <u>The Parties</u>

Plaintiff ITN Flix, LLC ("ITN") is an independent production company (FAC ¶ 4). According to the FAC, Plaintiff Gil Medina ("Medina") is an independent filmmaker who serves as a principal and managing member of ITN.  (*Id.* ¶ 5).

The FAC alleges that Defendants own and operate various television networks and stations.[3]  (FAC ¶¶ 7-10).  According to the FAC, Defendants are "broadcasting, televising, or distributing shows and programs" throughout Utah.  (*Id.* ¶ 12).

---

[3] Defendants have alerted Plaintiffs to the fact that neither Univision Salt Lake City, LLC, nor Univision Communications Inc. is a proper party to this lawsuit because neither entity had any involvement in broadcasting the Machete Movies.  Defendants provided corporate information to Plaintiffs regarding which, if any, Univision entities may be more appropriate parties.  *See* Declaration of Tamany Vinson Bentz ("Bentz Decl.") at ¶ 3.  To date, Plaintiffs have refused to amend their pleadings to correct their error.

B.     **The Subject Films**

1.     "Vengeance"

Plaintiffs allege that in or about 2004, Medina first met actor Danny Trejo ("Trejo"). (FAC ¶ 19).  At that time, Trejo was already an established character actor.  (*Id*.).  In or about 2005, Medina approached Trejo with an opportunity to play the lead in an "action feature film franchise built around a vigilante character to be portrayed by Trejo."  (*Id*. ¶¶ 20-21).  Plaintiffs, in turn, began working on a "vigilante action feature film" starring Trejo.  (*Id*. ¶ 22).  By the fall of 2005, Plaintiffs had "produced a rough cut" of such film.  (*Id*.)

Plaintiffs do not allege that any of the Defendants were provided with a copy of the script or rough cut of the film, or any materials whatsoever relating to any version of Plaintiffs' film. Rather, Plaintiffs allege that on or about November 3, 2005, *Plaintiffs and Trejo delivered a copy of the script and a DVD of the "rough" version of the film to filmmaker Robert Rodriguez* ("Rodriguez").  (*Id*. ¶ 23).  Rodriguez is *not* a defendant in this lawsuit, but was a named defendant in the lawsuits that were previously dismissed in which Plaintiffs did not plead copyright infringement.

Ultimately, Plaintiffs claim they created a "Trejo-centered vigilante action film franchise."  (*Id*. ¶¶ 24-25).  According to the FAC, after showing a script and "rough cut" *to non-party Rodriguez*, Plaintiffs "continued to develop, produce, and promote a Trejo-centered vigilante franchise, including producing, financing, and continuing to re-shoot, re-edit, and otherwise improve the first of their films: 'Vengeance.'"  ((*Id*. ¶ 26).  Ultimately, in 2006,

"Vengeance" was shown via "limited theatrical exhibits" "in a few small markets."  (*Id.* ¶¶ 26-27).[4]

> 2.   "Machete" and "Machete Kills"

Plaintiffs allege that in 2007, non-party Rodriguez directed and produced a trailer for "Machete," which featured Trejo as a "vigilante action hero…similar to the concept of Plaintiffs' 'Vengeance,'" which was shown in connection with one of Rodriguez's other hit films.  (FAC ¶ 33).  In 2009, Trejo began filming Rodriguez's full-length motion picture, "Machete."  (*Id.* ¶ 34).  In addition to Trejo, "Machete" also featured actors such as Robert De Niro, Jessica Alba, Steven Seagal, and Don Johnson.

"Machete" was released in 2010 and, as Plaintiffs acknowledge, was "commercially and critically successful."  (*Id.* ¶ 35).  According to the FAC, the film earned $26.6 million in the United States and $44.1 million worldwide.  (*Id.*).  While the film was produced and financed by Troublemaker Studios, L.P. and Quick Draw Productions, LLC, *Plaintiffs have not asserted a claim for copyright infringement against these companies*.  (*Id.* ¶¶ 16-17).

Plaintiffs also allege that a sequel to "Machete" titled "Machete Kills" was released in October 2013.  (*Id.* ¶ 36).  That film was allegedly produced and financed by the Machete Kills, LLC and El Chingon, Inc. production companies.  (*Id.* ¶¶ 14-15).  *Again, Plaintiffs do not allege a copyright claim against these entities*.

---

[4] Plaintiffs allege that they registered "Vengeance" with the Copyright Office.  (*Id.* ¶¶ 28, 30).

*Plaintiffs' sole allegation of wrongdoing/infringement with respect to Defendants is that they "promoted, displayed, and broadcast" the Machete Movies on their respective television networks.*  (*Id*. ¶¶ 37-38).  In this regard, Plaintiffs allege that *"[b]eginning in 2010* and each year thereafter, Defendants infringed upon [Plaintiffs'] copyright by placing upon the public market the 'Machete' movies," and that Defendants "supported, promoted and participated in copyright violations by showing and airing" such films.  (*Id*. ¶¶ 55, 59; *see also* ¶ 61 (alleging that *since 2010*, Defendants have been "televising, broadcasting, and otherwise marketing" the "Machete" Movies)).

With respect to the films themselves, Plaintiffs only allege three "similarities" between "Vengeance" and "Machete":

- the idea of an officer "who takes 'vengeance' on the bad man who killed his wife and daughter…by searching out the villains through information obtained on the streets";

- the idea of a final scene "between a priest and a bad man"; and

- Trejo is the lead actor in both films.

(*Id*. ¶ 49).  None of these similarities is an element that is protected by copyright.  The FAC does not allege a single similarity between "Vengeance" and "Machete Kills."

    **C.**    **Prior Lawsuits Failing to Allege Copyright Infringement**

This is the third lawsuit Plaintiffs have brought concerning "Vengeance" and the Machete Movies.

In January of 2013, ITN brought suit against, *inter alia*, Rodriguez and Machete Kills, LLC, in the United States District Court, District of Utah, Northern Division, Case No. 1:13-cv-00022 ("2013 Action"). In that action, ITN asserted various claims in connection with the alleged unlicensed use of Trejo in the Machete Movies. (2013 Action, Dkt. No. 2 (RJN, Ex. A)). ITN did not allege a claim for copyright infringement.

In June of 2013, ITN filed a first amended complaint against Rodriguez and Machete Kills, LLC, as well as Troublemaker Studios, L.P. and Quick Draw Productions, LLC. (2013 Action, Dkt. Nos. 51, 65 (RJN, Exs. B and C)). ITN alleged in its amended complaint that these defendants violated ITN's "property rights" by, among other things, creating and marketing the Machete Movies. (*See, e.g., id.* at ¶¶ 72, 79-88). While ITN's amended complaint asserted eleven causes of action against the makers of the Machete Movies, it once again did not assert a claim for copyright infringement. In fact, Plaintiffs intentionally did not bring a copyright claim, making it clear that they were not claiming that ITN "holds a copyright in Trejo's performance as embodied in a particular film," and that ITN "makes no claims to the copyrightable elements" of "Machete Kills." (2013 Action, Dkt. No. 126, p. 9-12 (RJN, Ex. J)). The Court ultimately dismissed the action for lack of personal jurisdiction. (*Id.*, Dkt. No. 146 (RJN, Ex. K)).

On November 13, 2014, ITN refiled suit against the creators of the Machete Movies in the United States District Court for the Central District of California, Case No. 2:14-CV-08797 ("California Action"), this time along with Plaintiff Medina. Again, Plaintiffs did not sue for copyright infringement. Plaintiffs acknowledged in their complaint that "Vengeance" and "Machete Kills" are in fact ***dissimilar***. (California Action, Dkt. No. 1, Complaint, ¶ 53 (RJN,

Ex. L) ("In communicating with potential exhibitors and distributors, Plaintiffs expressly pitched ["Vengeance"] as a competitive alternative to 'Machete Kills' – the Burger King to Rodriguez's and the Rodriguez Entity Defendants' McDonalds")).  Plaintiffs continued to deny that their claims regarding the Machete Movies were based on copyright.  (*See, e.g.*, California Action, Dkt. No. 42, p. 19 (RJN, Ex. M) (denying that Plaintiffs' claims were preempted by the Copyright Act and reiterating that "the 'work' at issue – Danny Trejo – falls outside the scope of copyright")).  The California Action was likewise dismissed.  (Dkt. No. 75 (RJN, Ex. N)).

      In a last-ditch attempt to assert a claim concerning the Machete Movies, Plaintiffs filed the instant action against Defendants on October 13, 2015.  (Dkt. No. 1).  The initial complaint was not served on any defendant.  Plaintiffs subsequently filed the FAC on February 16, 2016, which they have not yet served on Defendant Univision Holdings, Inc.[5]  (Dkt. No. 12).

---

[5] Univision Holdings, Inc. is a non-operating holding company and parent of Univision Communications Inc.  Defendants' counsel has advised Plaintiffs that, like the other improperly named Univision entities, Univision Holdings, Inc. is not a proper party to this action. Bentz Decl. at ¶ 3.

### III.  <u>LEGAL STANDARD</u>

Federal Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*.  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*  (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a valid claim and should be dismissed.  *Id.*

In ruling on motions to dismiss, courts must accept only well-pled allegations as true, and "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  To survive a motion to dismiss, a complaint must therefore contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678; *Burnett v. Mortgage Elec. Registration Sys.*, 706 F.3d 1231, 1235-36 (10th Cir. 2013).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Burnett*, 706 F. 3d at 1235 (citation omitted).

Here, the FAC should be dismissed without leave to amend because Plaintiffs have not, and cannot, plead facts to state a claim against Defendants for copyright infringement and Plaintiffs' claim as to broadcasts prior to October 13, 2012 is time-barred.  As such, Plaintiffs' sole claim fails as a matter of law.

**IV.   THE FAC SHOULD BE DISMISSED WITH PREJUDICE BECAUSE DEFENDANTS CANNOT BE LIABLE FOR BROADCASTING A NON-INFRINGING MOVIE.**

Plaintiffs allege Defendants infringed their copyrights by merely broadcasting the Machete Movies.  Plaintiffs do not allege, nor could they allege, that Defendants had a role in making the Machete Movies.  Thus, Defendants are only liable if their broadcast of the Machete Movies infringed on Plaintiffs' film "Vengeance."  By Plaintiffs' own admission, however, the Machete Movies do not infringe on "Vengeance," so Defendants cannot, as a matter of law, be liable for broadcasting a *non*-infringing movie.

As noted above, Plaintiffs previously brought two lawsuits against the people and entities responsible for making the Machete Movies and *never alleged copyright infringement*.  Instead, Plaintiffs completely disclaimed copyright infringement and admitted that their movie, "Vengeance," was *dissimilar* to the Machete Movies.  Plaintiffs cannot now sue mere broadcasters of the Machete Movies for copyright infringement when they already admitted in prior litigation against the makers of the Machete Movies *that they have no copyright infringement claim*.[6]  *See, e.g., Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC,* 692 F.3d 983,986, 996 (9th Cir. 2012) (holding that defendant was judicially estopped from asserting that Monroe died domiciled in California to take advantage of California's posthumous right of publicity, where the defendant previously alleged during probate proceedings that the individual

---

[6] Plaintiffs stated that they "make[] no claims to the copyrightable elements" of "Machete Kills." *See* 2013 Action, Dkt. No. 126, p. 9-12 (RJN, Ex. J).

died domiciled in New York to avoid payment of California's estate taxes, since defendant took "clearly inconsistent positions in prior judicial proceedings"); *Eastman v. Union Pac. R. Co*., 493 F.3d 1151, 1153 (10th Cir. 2007) (holding that the plaintiff was judicially estopped from pursuing his personal injury claims against the defendants because he failed to disclose his pending claims to the bankruptcy court in the context of his chapter 7 bankruptcy).

      Plaintiffs also admitted that they could not assert a claim for copyright infringement because they "do[] not hold a copyright interest in Trejo's dramatic performances." *See, e.g*., 2013 Action, Dkt. No. 119, p. 10 (RJN, Ex. G) (noting that ITN was not claiming "a copyright interest in the Trejo Property because a person's name, likeness, or image is not copyrightable subject matter"); *id*. at p. 12 (noting that ITN "does not allege that it holds a copyright in Trejo's performance as embodied in a particular film"). Likewise, Plaintiffs repeatedly disclaimed any copyright claim as it related to the Machete Movies, including distribution of the movies. *See* 2013 Action, Dkt. No. 124, p. 28 (RJN, Ex. I) (stating "no claims for distribution, reproduction, or publication rights."); 2013 Action, Dkt. No. 126, p. 10 (RJN, Ex. J).

      In the second litigation in California, Plaintiffs once again conceded that "Vengeance" and the Machete Movies are dissimilar. Specifically, Plaintiff admitted that they promoted "Vengeance" as "a competitive alternative to 'Machete Kills,'" describing "Vengeance" as Burger King and "Machete Kills" as McDonald's. *See* California Action, Dkt. No. 1, ¶ 53 (RJN, Ex. L).

      Because Plaintiffs have already admitted in prior litigation that "Vengeance" and the Machete Movies are dissimilar and hence, no copyright infringement claim lies, Defendants

cannot be liable for broadcasting a non-infringing movie.  Accordingly, the FAC fails as a matter of law and should be dismissed with prejudice and without leave to amend.

## V.      THE FAC SHOULD BE DISMISSED WITH PREJUDICE BECAUSE PLAINTIFFS CANNOT PLEAD A CLAIM FOR COPYRIGHT INFRINGEMENT.

The FAC is devoid of any allegations that would give rise to an actionable claim for copyright infringement against these Defendants, which is not surprising given Plaintiffs' concessions in prior litigation that the Machete Movies do not infringe on "Vengeance."

Specifically, there is no allegation in the FAC that "Vengeance" and the Machete Movies share substantially similar protectable elements.  To establish infringement, a plaintiff must prove (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original.  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 1296 (1991).  When, as here, there is an absence of direct evidence of copying, the second prong requires that the plaintiff allege that (1) the defendant had access to the copyrighted work and (2) the works at issue are substantially similar in their protected elements.  *Blehm v. Jacobs*, 702 F. 3d 1193, 1199 (10th Cir. 2012); *Fisher v. United Feature Syndicate, Inc.*, 37 F. Supp. 2d 1213, 1218-19 (D. Colo. 1999) *aff'd*, 203 F.3d 834 (10th Cir. 2000) (providing that "[u]nless Plaintiff can provide direct evidence of copying, he must establish both access and substantial similarity").  Failure to satisfy *either* element is grounds for dismissal.

"The mere fact that a work is copyrighted does not mean that every element of the work may be protected." *Feist*, 499 U.S. at 348.  Even if copied verbatim, unprotected elements

"cannot serve as the basis for ultimate liability for copyright infringement." *Gates Rubber Co. v. Bando Chem. Indus., Ltd.,* 9 F.3d 823, 832, n.7 (10th Cir.1993).  Rather, "[l]iability for copyright infringement will only attach where the Plaintiff can prove that the protected elements of the copyrighted material were copied." *Fisher,* 37 F. Supp. 2d at 1218. (citing *Gates Rubber Co.,* 9 F.3d at 833); *see also La Resolana Architects, PA v. Reno, Inc.,* 555 F.3d 1171, 1178 (10th Cir. 2009) (quoting *Gates Rubber Co.,* 9 F.3d at 832) (explaining that the plaintiff must show that the defendant "copied portions of [Plaintiff's] work" and "that those elements of the work that were copied were 'protected expression and of such importance to the copied work that the appropriation is actionable.'").  "A court is consequently required to find substantial similarity between those aspects of Plaintiff's work which are legally protectable and the Defendants' works." *Madrid v. Chronicle Books*, 209 F. Supp. 2d 1227, 1238 (D. Wyo. 2002) (citing *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 (10th Cir. 1996)).

With respect to dramatic works, in particular, such "protected" elements refer to "'articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in two works.'" *Funky Films, Inc. v. Time Warner Entm't Co.,* 462 F.3d 1072, 1077 (9th Cir. 2006) (citation omitted).  However, "*[s]cenes à faire,* which flow naturally from generic plot-lines, are not protectable." *Wild v. NBC Universal, Inc*., 788 F. Supp. 2d 1083, 1098 (C.D. Cal. 2011); *see also Lyles v. Capital-EMI Music Inc*., No. 2:12-CV-00751, 2013 WL 6000991, at *4 (S.D. Ohio Nov. 12, 2013) ("Concepts and themes that are 'too commonplace' are also unprotected.").

In assessing whether the allegedly infringing work is "substantially similar to the protected elements" of the plaintiff's work, the Tenth Circuit applies an "abstraction-filtration-comparison" test.  *Madrid*, 209 F. Supp. 2d at 1239.  Such test requires that the court:

> *1) separate the ideas (and basic utilitarian functions), which are not protectable, from the particular expression of the work; 2) filter out the nonprotectable components of the product from the original expression; and 3) compare the remaining protected elements to the allegedly copied work to determine if the two works are substantially similar.*

*Id*. (citing *Gates Rubber Co. v. Bando Chemical Industries, Ltd*., 9 F.3d 823 (10th Cir. 1993)) (emphasis added).[7]  In making its determination, the court considers "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value."  *Country Kids*, 77 F.3d at 1288.  A "compilation of random similarities scattered throughout the works" is not sufficient to satisfy the substantial similarity analysis. *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994).

Indeed, if a court "concludes that the similarities pertain only to unprotected elements of the work, it is appropriate for the court to dismiss the action because, as a matter of law, there is no copyright infringement."  *Bell v. Blaze Magazine,* No. 99 Civ. 12342, 2001 WL 262718, at *3 (S.D.N.Y. 2001); *see also Fisher,* 37 F. Supp. 2d at 1218 (recognizing that "[a] Court may find non-infringement as a matter of law where the similarity between the works concerns only non-

---

[7] In other words, the "test requires filtering out nonprotectable ideas and components and then comparing protectable elements in the plaintiff's work with the defendant's allegedly infringing product." *TransWestern Pub. Co. LP v. Multimedia Mktg. Associates, Inc.,* 133 F.3d 773, 777 (10th Cir. 1998).

copyrightable elements of the plaintiff's work or no reasonable jury could find the two works to be substantially similar"); *Madrid*, 209 F. Supp. 2d at 1239 (same).

Here, Plaintiffs fail to state a claim for copyright infringement because they have not alleged similarities – let alone ones that are substantial – between the protected elements of "Vengeance" and the Machete Movies.  As such, Plaintiffs' copyright infringement claim is legally and factually unsupportable and must be dismissed.

A.      **Plaintiffs' Boilerplate Allegations of Substantial Similarities Fail to Meet the Basic Pleading Standards Under *Iqbal* and *Twombly*.**

Plaintiffs' barebones and conclusory assertions of "copying" and "similarities" – without any factual support – fall woefully short of stating a viable claim against Defendants.  *See, e.g.,* FAC ¶ 34 (simply asserting that "Machete" is "substantially similar to Plaintiffs' films"); *id*. ¶ 36 (merely alleging that "Machete Kills" was "remarkably similar" to Plaintiffs' films); *id*. ¶ 46 (summarily claiming that the Machete Movies "copied" portions of Plaintiffs' copyrighted material); *id*. ¶ 48 (alleging that "there are probative similarities between the copyrighted material and the allegedly copied material").  Such threadbare assertions and formulaic recitations of the "substantial similarity" element fail to satisfy the basic pleading standards under *Twombly* and *Iqbal*, and are insufficient to state a claim against Defendants.

**B.** **The Only Similarities Alleged Between "Vengeance" and "Machete"**

**Constitute *Non*-Protectable Elements of the Works.**

Plaintiffs merely allege three similarities between "Vengeance" and "Machete:"[8] (1) both films are about an officer "who takes 'vengeance' on the bad man who killed his wife and daughter…by searching out the villains through information obtained on the streets," (2) the final scenes in both films are "between a priest and a bad man," and (3) Trejo is the lead actor in both films. (FAC ¶ 49). These allegations, however, refer to *non*-protectable, generic concepts that do not come close to stating a claim for copyright infringement – and cannot even be considered by the Court in its analysis. *See Funky Films*, 462 F.3d at 1077 (requiring courts to filter out non-protectable elements from its analysis); *Madrid*, 209 F. Supp. 2d at 1239 (explaining that the court must "filter out the nonprotectable components of the product from the original expression").

1.   The Fact that the Films are About Officers Who Take Vengeance on "Bad

Men" is Not Protectable.

Plaintiffs' assertion that "Vengeance" and "Machete" are similar because both films are about an officer "who takes 'vengeance' on the bad man who killed his wife and daughter…by searching out the villains through information obtained on the streets" – in other words, that they share the same vigilante action genre – is not protectable.   (FAC ¶ 49).

_____

[8] Other than the bald accusations of similarities, the FAC is completely silent as to how "Vengeance" and "Machete Kills" are similar in any respect.

"Copyright law protects only the expression of an idea, not the idea itself." *Fisher*, 37 F. Supp. 2d at 1218.  Indeed, "[t]he first step in determining the substantial similarity issue [under the Tenth Circuit's test] is to separate the unprotectable *ideas* from the particular expression of the work[.]" *Madrid*, 209 F. Supp.2d at 1239 (emphasis added).  In this regard, "[i]t is well established that, as a matter of law, certain forms of literary expression are not protected against copying," including "the general idea for a story." *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985).

Illustratively, in *Madrid v. Chronicle Books*, the court rejected the plaintiff's argument that her poem was "substantially reproduced" in defendants' film, "Monsters, Inc.," on the ground that any similarities between the film and poem related to unoriginal ideas.  209 F.Supp.2d 1227, 1231 (D. Wyo. 2002).  The court explained that the alleged similarities of "a big, fat, furry monster with horns on its head, a small thin child, monsters in children's bedroom closets and vice versa at night, a mother-child relationship—are merely ideas, and not the expression of ideas, and therefore, not subject to copyright protection." *Id*. at 1241.  The court noted that such elements "are not original, as they appear in many children's stories and are generally known in the public sphere," emphasizing that "[g]eneralized themes and ideas lie in the public domain and are not copyrightable." *Id*.

Here, Plaintiffs claim that the films merely share the same story "idea" or "genre," which is unprotectable under copyright law. *See, e.g.,* FAC ¶ 33 (alleging that the trailer for "Machete" was "similar to the *concept* of Plaintiffs' 'Vengeance'") (emphasis added); California Action,

9

Dkt. No. 1, ¶ 39 (RJN, Ex. L) (alleging that Machete was "clearly similar to the concept of Plaintiffs' 'Vengeance' franchise").

Moreover, it well settled that "*scenes à faire*," which refers to "'incidents, characters or settings which, as a practical matter, are indispensable or standard in the treatment of a given topic,'" are not protectable.  *Feder v. Videotrip Corp.*, 697 F. Supp. 1165, 1170-71 (D. Colo. 1988); *see also Lyles,* 2013 WL 6000991, at *4 (explaining that the court must "filter out the unoriginal, unprotectable elements, which include *scenes à faire*"); *Madrid*, 209 F. Supp.2d at 1242 (recognizing that the "scenes a faire" doctrine "excludes from copyright protection material that is 'standard,' 'stock,' or 'common' to a particular topic, or that 'necessarily follow[s] from a common theme or setting.'"); *Fisher*, 37 F. Supp. 2d at 1220 (recognizing that "where the protected work and the accused work express the same idea, the similarity that inevitably stems solely from the commonality of the subject matter is not proof of copying.").

"Case law illustrating the concept of '*scenes a faire'* reveals that two stories can bear remarkable similarity…without a finding that one has violated the copyright of the other."  *Wild*, 788 F. Supp. 2d at 1099*; see e.g., Funky Films*, 462 F.3d at 1081 (no substantial similarity in works involving "the family-run funeral home, the father's death, and the return of the 'prodigal son,' who assists his brother in maintaining the family business"); *Berkic*, 761 F.2d at 1293 (finding no substantial similarity between two works about young professionals exposing a criminal organization that murders healthy people and sells the organs for transplants); *Madrid*, 209 F. Supp.2d at 1242 (finding no substantial similarity because "the snapshot of a monster encountering a child in a closet is the most natural idea that flows from the idea of monsters and

children—as children, many people may have had nightmares of monsters in the closet and under the bed"); *Doody v. Penguin Group (USA) Inc*., 673 F. Supp.2d 1144, 1156 (D. Haw. 2009) ("The closest plot similarity is that in both works characters are kidnapped, driven over rough terrain for several hours and past a sizeable city to a mansion, and held by a wealthy Mongolian villain who attempts to force his captives to help him. This loose similarity is merely a general idea and not a form 'of literary expression protected against copying.'").

The fact that in both "Vengeance" and "Machete" officers seek vengeance for their families' murder, and pursue villains through information obtained from the streets, is vague and generic and, at most, amounts to unprotected *scenes à faire* insofar as such elements are virtually indispensable to any film about vigilantes.  *See, e.g., Walker v. Time Life Films, Inc*., 784 F.2d 44, 50-51 (2d Cir. 1986) (elements such as "drunks" and "derelict cars" "would appear in any realistic work about the work of policemen in the South Bronx"); *Sinicola v. Warner Bros., Inc*., 948 F. Supp. 1176, 1190 (E.D.N.Y. 1996) (murders and drug trafficking constitute *scenes a faire* commonly used in street justice stories).  Indeed, creating a vigilante out of an officer who has suffered a loss at the hands of criminals is an idea or theme that has been featured in numerous movies.

          2.     <u>Plaintiffs Cannot Establish Substantial Similarities by Merely Alleging that Both Films Include a Scene "Between a Priest and Bad Man."</u>

Plaintiffs' generalized assertion that "Vengeance" and "Machete" are similar insofar as they both include an unremarkable scene between a "priest" and a "bad man" likewise falls in the category of non-protectable expression that cannot support a finding of substantial similarity.

Indeed, a generic scene involving a "bad man" presumably confessing his sins constitutes textbook *scenes à faire* that would appear in any number of films, and is hardly surprising in a vigilante action movie.  Moreover, merely "[s]haring a simple plot feature" is legally insufficient to establish a substantial similarity.  *Segal v. Rogue Pictures*, 544 Fed. Appx. 769, 770 (9th Cir. 2013); *see also Denker v. Uhry*, 820 F. Supp. 722, 732 (S.D.N.Y. 1992) (using a "similar plot device ... does not constitute infringement").

          3.      <u>Plaintiffs Cannot Claim Copyright Protection Over Danny Trejo.</u>

Plaintiffs cannot claim copyright protection over the actor, Danny Trejo.  "Actors" are not protectable elements.  *See, e.g., Falotico v. WPVI-Channel 6*, 1989 WL 143238, at *4 (E.D. Pa. Nov. 22, 1989) ("[A]lthough some of the individual celebrities appear in both plaintiff's and defendant's works, the idea of interviewing South Philadelphia celebrities and presenting facts relating to their background, is not copyrightable.  Thus, any similarity in the choice of a particular celebrity is not part of the substantial similarity inquiry for purposes of determining if copyright infringement has occurred.") (citation omitted).  Indeed, "*[o]riginality remains the sine qua non of copyright; accordingly, copyright protection may extend only to those components of a work that are original to the author.*"  *Feist*, 499 U.S. 340 at 348.  Of course, Plaintiffs did not create Trejo, a real person.

Additionally, no mention is made or alleged that Trejo portrays the same character in each film.  Or that any of the other famous actors in the Machete Movies portray the same character as an actor in "Vengeance."  Even if Trejo or others portrayed the same character, there are no allegations that detail the similarity of character attributes and traits that would compel a

conclusion that such characters warrant copyright protection.  A "stock character or basic character type is not entitled to copyright protection."  *Shame on You Productions v. Banks*, No. CV 14-03512, 2015 U.S. Dist. LEXIS 107450, at *89-90 (C.D. Cal. Aug. 14, 2015).  Only distinct characters who have been sufficiently developed are entitled to protection, whereas less developed characters who are indistinct are not entitled to protection.  *Id.*; *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2nd Cir. 1930).  In skeletal fashion, Plaintiffs allege only that Trejo plays a "vigilante" in "Vengeance" and "Machete," not that distinct protectable characters are present in the films.  As a matter of law, Plaintiffs' allegation is insufficient to establish copyright infringement.

## VI.     PLAINTIFFS' COPYRIGHT INFRINGEMENT CLAIM IS TIME-BARRED WITH RESPECT TO BROADCASTS OF THE MACHETE MOVIES AIRING PRIOR TO OCTOBER 12, 2012.

Plaintiffs' copyright claim is largely time-barred on its face.  No civil action under the Copyright Act can proceed "unless it is commenced within three years after the claim accrued."  17 U.S.C. § 507(b).  In the Tenth Circuit, "a claim for copyright infringement accrues when one has knowledge of a violation or is chargeable with such knowledge."  *Diversey v. Schmidly*, 738 F.3d 1196, 1200 (10th Cir. 2013) (internal quotation marks omitted).  In other words, the limitation period begins to run when "the plaintiff knows or has reason to know of the infringement."  *Id.* at 1201 (citing *Roley v. New World Pictures, Ltd.,* 19 F.3d 479, 481 (9th Cir.1994)).

The allegations in the FAC establish that Plaintiffs admittedly knew—or at the very least "had reason to know"—of the purported infringement *no later than 2010* when "Machete" was released and allegedly first aired by Defendants.  Indeed, Plaintiffs allege that "*[b]eginning in 2010*, Defendants infringed upon their copyrights by broadcasting the Machete Movies.  (FAC ¶ 55, 61).[9]  Plaintiffs also acknowledge in the FAC both the commercial success of "Machete" *upon its 2010 commercial release*.  (*Id*. ¶¶ 19, 21-23, 35).  Plaintiffs were unquestionably aware of "Machete" – and Defendants' airing of the movie – in 2010, which is the accrual date in this case.

As such, Plaintiffs are foreclosed from bringing an infringement claim for all broadcasts of the Machete Movies that aired over three years before the filing of their October 13, 2015 complaint (Dkt. No. 1).  This is the case even if, as Plaintiffs allege, Defendants continued to air the films during the limitations period.  *See Diversey*, 738 F.3d at 1200 (holding that a plaintiff cannot "recover for acts of infringement occurring more than three years before the filing of a complaint merely because some related act of infringement occurs within the limitation period").

Accordingly, any and all of Defendants' broadcasts of the Machete Movies prior to October 12, 2012 that form the basis of Plaintiffs' copyright infringement claim are time-barred and should be dismissed with prejudice with respect to such airings pursuant to 17 U.S.C. § 507(b).

---

[9] Plaintiffs also concede that they were aware of "Machete" as early as 2007, when Rodriguez released a trailer for the movie that Plaintiffs allege was similar in concept to "Vengeance." (FAC ¶ 31, 33).

## VII.   PLAINTIFFS' COPYRIGHT INFRINGEMENT CLAIM SHOULD BE DISMISSED WITH PREJUDICE BECAUSE THEY DO NOT ALLEGE THAT DEFENDANTS HAD ACCESS TO "VENGEANCE."

Plaintiffs do not allege that Defendants had anything to do with the creation of the Machete Movies, and the sole basis for their claim is that Defendants broadcast the allegedly infringing movies.  However, based on the Complaint's inartfully pled allegations of direct infringement, it bears noting that Plaintiffs must plead that Defendants had access to "Vengeance" if they wish to contend that Defendants somehow directly infringed their copyrights in "Vengeance."  *See supra* Section V, citing *Blehm v. Jacobs*, 702 F. 3d 1193, 1199 (10th Cir. 2012); *Fisher v. United Feature Syndicate, Inc.*, 37 F. Supp. 2d 1213, 1218-19 (D. Colo. 1999) *aff'd*, 203 F.3d 834 (10th Cir. 2000) (providing that "[u]nless Plaintiff can provide direct evidence of copying, he must establish both access and substantial similarity").  Failure to satisfy this element is itself grounds for dismissal.

The FAC is devoid of a single factual allegation to suggest that Defendants ever had access to "Vengeance."[10]  *Fisher*, 37 F. Supp. 2d at 1226 ("Absent direct evidence of copying, access by Defendants to Plaintiff's work is an element which Plaintiff must establish.")  Plaintiffs' sole allegation concerning access to "Vengeance," which was never commercially

---

[10] Nor have Plaintiffs alleged facts to show that the works are so "strikingly similar" as to preclude the possibility of independent creation such that access can be legally inferred.  *La Resolana Architects, PA,* 555 F.3d at 1179; *see also Hofmann v. Pressman Toy Corp.*, 790 F. Supp. 498, 509 (D.N.J. 1990) ("In those few instances where courts have found striking similarity sufficient to prove access, the facts have shown that 'in virtually every detail, the [two works] are identical[.]'")

released, is that *non-party Rodriguez* and the "*producers of the 'Machete' and 'Machete kills' films*" received a copy of a DVD and script of a "rough" version of Plaintiffs' film in November of 2005.  (FAC ¶¶ 22, 23, 26, 48).

Moreover, even Plaintiffs' allegation concerning *non-party* Rodriguez and the *non-party* producers of the Machete Movies does not suffice to allege access on behalf of those non-parties because Plaintiffs concede that the DVD and script related to a "*rough cut* of a vigilante action feature film" that was "later re-shot and re-edited and otherwise modified in different versions." (FAC ¶ 22) (emphasis added); *id*. at ¶ 26.  Whatever DVD and script *were provided to non-parties Rodriguez and the production companies back in 2005*, they were admittedly not the same as "Vengeance."  Nowhere in the FAC do Plaintiffs allege that non-party Rodriguez – or anyone else – in fact had access to the final, copyrighted version of their film.

Even assuming non-party Rodriguez had access to "Vengeance," which he did not, such access *cannot be imputed to Defendants*.  While Plaintiffs allege that Rodriguez is the founder and chairman of defendant El Rey, that network was not formed until 2012, well after Rodriguez purportedly received a copy of the draft script and DVD of the rough version of the film.  (FAC, ¶ 10).[11]  Of course, "access" by Rodriguez in 2005 could not be attributed to El Rey, which was not even formed until seven years later.  Further, it is well-settled that access cannot be permissibly inferred from the "bare corporate receipt" of an infringing work.  *Bouchat v.*

---

[11] Defendants request that the Court take judicial notice of the Delaware Secretary of State's website, which provides that El Rey Network, LLC was formed on January 31, 2012, on the basis that it is public record and not subject to reasonable dispute.  Fed. R. Evid. 201(b)(2); Bentz Decl. ¶ 4.

*Baltimore Ravens, Inc.*, 241 F.3d 350, 363 (4th Cir. 2001); *see e.g., E.J. Novak v. National Broadcasting Company*, 752 F. Supp. 164, 169 (S.D.N.Y. 1990) (holding that a broadcast network did not have access merely because an unsolicited work may have been received by the network's head of programming); *Vantage Point, Inc. v. Parker Bros.*, 529 F. Supp. 1204, 1212 (E.D.N.Y. 1981) (holding that access could not be imputed to gaming company simply because the company's president received and considered an unsolicited game idea).

If Rodriguez and El Rey were deemed to have access, which would be illogical and contrary to well-settled law, Plaintiffs still cannot legitimately claim access by any of the Univision Defendants as a result.  The Univision entities never received any materials related to any version of "Vengeance."  Any business connection these companies may have with El Rey does not charge them with access.  *See Fisher*, 37 F. Supp. 2d at 1219 (finding that allegations that parent corporation of alleged copyright infringer had access to copyrighted material was insufficient to state a claim that alleged infringer had access); *see also Lyles*, 2013 WL 6000991, at *3 (holding that "[a]bsent some nonspeculative basis from which to conclude that Plaintiff's songs got into the hands of Defendants...Plaintiff has failed to plead access in manner that would allow his copyright infringement claims to survive" a motion to dismiss).

Nor can Plaintiffs claim that the Defendants had any reasonable opportunity to view or copy the allegedly infringed work.  "Access may not be inferred through mere speculation or conjecture'" – "'[t]here must be a reasonable possibility of viewing plaintiff's work.'" *La Resolana Architects,* 555 F.3d at 1178 (citing 4 Melville B. Nimmer & David Nimmer, *Nimmer*

*on Copyright* § 13.02[A], at 13–21 (2008)).  "[C]reating a bare possibility that the defendant had

access is not sufficient." *Id.* (quotations and citations omitted).

Plaintiffs admit that "Vengeance" was only shown in "limited theatrical exhibits" and

was effectively never "released."  (*See* FAC ¶¶ 26-27, 49(e)-(f) (providing that "Vengeance" was

"the first movie Trejo ever filmed as a lead actor in a movie," whereas "Machete" "was the first

movie *released* with Trejo as the lead" (emphasis added).)  Plaintiffs also acknowledged in their

prior lawsuits that the "original version of [Vengeance] failed to obtain any substantial

distribution or release, beyond the very small theatrical releases in late 2006."  *See* California

Action, Dkt. No. 1, ¶ 38 (RJN, Ex. L); *id.* ¶ 63 (stating that Plaintiffs "were unable to release"

their film in early 2013 as planned); *see also* 2013 Action, Dkt. Nos. 51 and 65, ¶ 87 (RJN, Exs.

B and C) (asserting that "Vengeance" was not going to be released until the release of "Machete

Kills").

Because Plaintiffs have not, and cannot, allege access by Defendants, their copyright

claim fails as a matter of law.

## VIII.   <u>THE FAC SHOULD BE DISMISSED WITH PREJUDICE.</u>

It is well-established that a claim should be dismissed with prejudice when, as here,

further amendment would be futile.  *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532

(9th Cir. 2008).  This is Plaintiffs' third lawsuit concerning the Machete Movies and it amended

its pleadings in at least one of those cases and here.  As such, Plaintiff has had at least five

chances to assert a copyright claim regarding the Machete Movies, and has failed to do so every

time.  Courts in several jurisdictions recognize that amendments are futile when, as here, there

have been other litigations involving the same issues and a failure to state a claim.  *See, e.g.*, *Field v. GMAC LLC*, 660 F. Supp. 2d 679, 690-91 (E.D. Va. 2008) aff'd, 328 F. App'x 873 (4th Cir. 2009) and aff'd, 328 F. App'x 873 (4th Cir. 2009) (holding that "[i]n light of the extensive history of related litigations preceding this case, allowing plaintiff to amend his complaint would be futile," emphasizing that "plaintiff has already had his day in court on these events—several days, in fact—and [the court] does not believe dismissal without prejudice to be appropriate here"); *Gibson v. Pennsylvania Pub. Utilities Comm'n*, No. 1:15-CV-00855, 2015 WL 3952777, at *8 (M.D. Pa. June 18, 2015), aff'd (Feb. 1, 2016) ("It is clear from the facts alleged by [plaintiff], the nature of the legal theories advanced in his complaint, and his long prior history of frivolous litigation that amendment would be futile."); *Schultz v. Krause*, No. CIV. S-11-1796 MCE, 2011 WL 6293939, at *4-5 (E.D. Cal. Dec. 13, 2011) *report and recommendation adopted*, No. 2:11-CV-01796 MCE, 2012 WL 74779 (E.D. Cal. Jan. 9, 2012) (granting defendant's motion to dismiss without leave to amend, where the plaintiff had "previously filed a very similar lawsuit").

## IX.   CONCLUSION

For the foregoing reasons, Plaintiffs' claim for copyright infringement against Defendants should be dismissed with prejudice and without leave to amend.

///

///

///

///

DATED this 17th day of March, 2016.

STRONG & HANNI

*/s/ Brooke Johnson*

_____

Brian C Johnson
Brooke Johnson
*Attorneys for Defendant Univision*
*Salt Lake City, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 17th day of March, 2016, a true and correct copy of the

foregoing **DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P.**

**12(B)(6)** was served by the method indicated below, to the following:

David W. Brown
2880 West 4700 South, Suite F
Salt Lake City, UT 84129
law.davidwbrown@gmail.com
*Attorneys for Plaintiffs*

( )   U.S. Mail, Postage Prepaid
( )   Hand Delivered
( )   Overnight Mail
( )   Facsimile
( )   CM/ECF filing
( )   Email

*/s/*

_____

21