IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ITN FLIX, LLC, a Utah limited liability company; and GIL MEDINA, an individual,<br><br>        Plaintiffs,<br><br>v.<br><br>UNIVISION HOLDINGS, INC., a New York Corporation; UNIVISION SALT LAKE CITY, LLC; UNIVISION COMMUNICATIONS, INC., a Delaware Corporation; and EL REY NETWORK, LLC,<br><br>        Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS**<br><br><br>Case No. 2:15-cv-00736-DN<br><br>District Judge David Nuffer |

Defendants Univision Holdings, Inc.; Univision Salt Lake City, LLC; Univision Communications, Inc.; and El Rey Network, LLC (collectively "Broadcasters") move to dismiss Plaintiffs' Amended Complaint ("Complaint")[1] with prejudice ("Motion").[2] Plaintiffs oppose the Motion ("Opposition").[3] The Broadcasters filed a reply in support of their Motion ("Reply").[4] For the reasons below, the Motion is GRANTED.

## BACKGROUND[5]

Plaintiffs' Complaint alleges one claim for relief for copyright infringement under 17 U.S.C. § 102. To support this claim, Plaintiffs make the following factual allegations:

---

[1] Amended Complaint ("Complaint"), docket no. 12, filed Feb. 16, 2016.

[2] Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion"), docket no. 20, filed Mar. 17, 2016.

[3] Memorandum in Opposition to Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ("Opposition"), docket no. 32, filed May 6, 2016.

[4] Reply in Support of Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ("Reply"), docket no. 33, filed May 23, 2016.

[5] The allegations provided in this section derive from the Complaint and the parties' briefing. For purposes of this memorandum decision and order, the plaintiff's allegations are assumed to be true.

From 2004 to 2006, Plaintiff Medina wrote and filmed a movie starring Danny Trejo as the lead actor.[6] It was the first movie Trejo ever filmed as a lead actor.[7] The film was originally entitled "Jack's Law," but the title was later changed to "Vengeance."[8] Plaintiffs registered the film "with the applicable copyright offices."[9] The film "is about a police officer who takes 'vengeance' on the bad man who killed his wife and daughter."[10] "He takes vengeance by searching out the villains through information obtained on the streets."[11] "The final scene in 'Vengeance' is between a priest and a bad man."[12]

In November 2005, Plaintiffs provided a "rough cut" of the movie to Robert Rodriguez, a film producer.[13] Rodriguez is not a defendant in this case. Rodriguez allegedly examined the script of the movie and the "rough cut" but told the Plaintiffs he was not interested in producing the movie.[14] After Rodriguez told Plaintiffs he was not interested, the Plaintiffs continued to re-shoot and re-edit the film and it was eventually released "in a few small markets" in 2006.[15]

Between 2007 and 2009, Rodriguez became interested in developing, producing, and directing a vigilante film franchise centered around Trejo in the lead role.[16] In 2009, Trejo agreed to star in a film produced by Rodriguez entitled "Machete." Plaintiffs allege that Machete "copied much of the Plaintiffs' original films" and "was substantially similar to Plaintiffs'

---

[6] Complaint ¶ 22.
[7] *Id.* ¶ 49(e).
[8] *Id.* ¶ 22.
[9] *Id.* ¶¶ 28-30.
[10] *Id.* ¶ 49(a).
[11] *Id.* ¶ 49(a).
[12] *Id.* ¶ 49(c).
[13] *Id.* ¶ 23.
[14] *Id.*
[15] *Id.* ¶¶ 26-27.
[16] *Id.* ¶ 31.

films." The similarities alleged by Plaintiffs are that (1) "Machete is about a federal officer who takes 'vengeance' on the bad man who killed his wife and daughter. He takes vengeance by searching out the villains through information obtained on the streets."[17] (2) "The final scene in Machete is between a priest and a bad man, and duplicates the scene that was filmed for Vengeance in 2005."[18] (3) "The lead actor in Machete was Danny Trejo and was the first movie released with Trejo as the lead."[19]

Machete was released in 2010.[20] In about October 2013, a sequel entitled "Machete Kills" was produced and released by Rodriguez. The Complaint alleges that "Defendants have actively promoted, displayed, and broadcast the 'Machete' and 'Machete Kills' movies to the public" by "show[ing] these movies publicly on their respective networks, all to the detriment of Plaintiffs, thereby infringing on Plaintiffs' copyrights."[21]

## MOTION TO DISMISS STANDARD

Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation."[22] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"[23] Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[24] Indeed, "[t]hreadbare recitals of the

---

[17] *Id.* ¶ 49(b).

[18] *Id.* ¶ 49(d).

[19] *Id.* ¶ 49(f).

[20] *Id.* ¶ 35.

[21] *Id.* ¶¶ 37-38.

[22] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[23] *Id.*

[24] *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a valid claim and should be dismissed.[25]

In ruling on motions to dismiss, courts must accept only well-pled allegations as true, and "are not bound to accept as true a legal conclusion couched as a factual allegation."[26] To survive a motion to dismiss, a complaint must therefore contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face."[27] "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"[28]

## DISCUSSION

To establish copyright infringement, a plaintiff must prove (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original.[29] Because "[d]irect proof of copying is rare,"[30] a plaintiff may establish the second prong by showing "[a] that the defendant had access to the copyrighted [work], and [b] that there are probative similarities between the copyrighted material and the allegedly copied material."[31] To survive the motion to dismiss, the Complaint must contain well-pled allegations establishing the elements described above.

---

[25] *Iqbal*, 556 U.S. at 678.

[26] *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

[27] *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678; *Burnett v. Mortgage Elec. Registration Sys.*, 706 F.3d 1231, 1235-36 (10th Cir. 2013).

[28] *Burnett*, 706 F. 3d at 1235 (citation omitted).

[29] *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

[30] *Gates Rubber Co. v. Bando Chemical Indus., Ltd.*, 9 F.3d 823, 833 (10th Cir. 1993).

[31] *Id.* at 832.

Plaintiffs allege that they own a valid copyright to the movie "Vengeance" (previously titled "Jack's Law").[32] The Broadcasters do not challenge this allegation. Therefore, the first element of copyright infringement is considered established for purposes of this motion.

The second element requires the plaintiff to sufficiently allege that Defendants copied Plaintiff's film. The Complaint does not allege direct copying. Thus, to establish the element of copying, the Complaint must contain sufficient allegations that (a) the Broadcasters had access to Plaintiffs' film and (b) there are "probative similarities" between Plaintiffs' film and the Machete films.

### Access

The only allegation in the Complaint expressly stating "access" is that the "*producers* of the 'Machete' and 'Machete Kills' films had access to the copyrighted works."[33] However, the "producers" are not defendants in this case. Thus, alleging that the producers had access does not establish that the *Broadcasters* had access. The Complaint does not allege that any of the Broadcasters—Univision Holdings, Inc.; Univision Salt Lake City, LLC; Univision Communications, Inc.; and El Rey Network, LLC—produced Machete or Machete Kills.[34] Without alleging that the Broadcasters had access to Plaintiffs' film, Plaintiffs cannot establish that the Broadcasters engaged in "copying."

The Complaint *does* allege that *Rodriguez* obtained access to the Plaintiffs' film in "late 2005."[35] But Rodriguez is not a defendant in this case. Thus, there is a significant question

---

[32] Complaint ¶¶ 28-30.

[33] *Id.* ¶ 48 (emphasis added).

[34] *See id.* ¶¶ 4-18 (alleging that the following companies produced Machete and Machete Kills: Machete Kills, LLC; El Chingon, Inc.; Troublemaker Studios, L.P.; and Quick Draw Productions, LLC).

[35] *Id.* ¶ 23.

whether Rodriguez's alleged access in 2005 provides an adequate link for purposes of copyright access to El Rey Network or any of the other Broadcasters.[36]

"There are three possible legal theories for proving access in a copyright case: [i] direct access; [ii] access through third parties; and [iii] 'striking similarity' between the plaintiff's and defendants' work."[37]

### 1. Direct Access

As explained above, the Complaint does not allege that the Broadcasters directly accessed Vengeance. Plaintiffs recognize this.[38]

### 2. Third Party Access

The Complaint does not specifically allege that the Broadcasters had access to Vengeance through third parties. At best, the Complaint indirectly suggests third party access by alleging that Rodriguez had access to Vengeance in late 2005,[39] and that Rodriguez is the founder and chairman of the El Rey Network.[40] The Complaint also alleges that Rodriguez was used by "Univision" "as the bridge between English-speaking and non-English speaking [sic] Hispanics[.]" Thus, there is an indirect inference that Rodriguez could have communicated his knowledge of Vengeance to the Broadcasters.

However, even assuming these allegations are true, and assuming that Rodriguez communicated information about Vengeance to the Broadcasters, this would fail to establish third party access because, as Plaintiffs admit, Vengeance was "re-shot and re-edited and

---

[36] *See* Opposition at 10-11 (arguing that the Complaint contains sufficient facts to establish that "the creators of Machete had access to Vengeance" because Plaintiffs had, years before, "delivered a copy of the script and a DVD . . . *to Rodriguez*") (emphasis added).

[37] *Hofmann v. Pressman Toy Corp.*, 790 F. Supp. 498, 505 (D.N.J. 1990).

[38] Opposition at 19.

[39] Complaint ¶ 23.

[40] *Id.* ¶ 10.

otherwise modified" after it was provided to Rodriguez in 2005. There is no allegation that Rodriguez was given more information about Vengeance after 2005. Thus, when Machete allegedly began to be made in 2007, Vengeance had evolved into a different work. Access cannot be inferred unless "the facts have shown [or the Complaint has alleged facts showing] that in virtually every detail, the [two works] are *identical*."[41]

Moreover, the Complaint does not allege that El Rey Network was involved in *making* or *producing* Machete. It only alleges that El Rey and the other Defendants *broadcasted* the film.[42] Thus, even assuming the allegations in the Complaint are true, that Rodriguez had access to Plaintiffs' film and that his access could be imputed to El Rey, this access is insignificant because there is no allegation that El Rey played any role in producing the Machete films. Thus, whatever third party access El Rey may have had to Plaintiffs' film, it is ineffective to establish access that is relevant to copyright infringement. For these reasons, the Complaint does not contain sufficient allegations of third party access.

### 3. Striking Similarity

Plaintiffs argue that access can be inferred because "*Vengeance* and *Machete* are strikingly similar."[43] According to Plaintiffs, "[t]he movies follow the same plotline, employ nearly indistinguishable characters, and are executed in substantially similar fashion."[44] Plaintiffs also argue that "Danny Trejo's portrayal of nearly identical vigilantes is undeniable."[45]

---

[41] *Hofmann*, 790 F. Supp. at 509.

[42] Complaint ¶¶ 37-38.

[43] Opposition at 20.

[44] *Id.*

[45] *Id.*

"Liability for copyright infringement will only attach where the Plaintiff can prove that the *protected elements* of the copyrighted material were copied."[46] "Copyright law protects only the expression of an idea, not the idea itself."[47] "The Copyright Act states that copyright protection does not extend to 'any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.'"[48] "[C]opyright does not prevent subsequent users from copying from a prior author's work those constituent elements that are not original . . . ."[49] For example, "general plot ideas" are not protectable.[50] Things that are "generally known in the public sphere" are not protectable.[51] "No one can own the basic idea for a story."[52]

> To prove substantial similarity between the copyrighted work and the alleged infringing work, the Tenth Circuit has adopted the "abstraction-filtration-comparison" test. The first step of abstraction requires the Court to separate the unprotectable ideas from the work's original expression. Second, the Court filters out all other unprotectable elements from the expression. Finally, the Court compares the remaining protected elements to the allegedly infringed original work and determines whether the works are substantially similar. In making this determination, the Court looks to see if the similarities between the works are so similar that an ordinary reasonable person would find that the defendant had unlawfully infringed the plaintiff's original work. "The essence of this test is whether the 'ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same.'"[53]

Here, Plaintiffs cite general plot ideas as a basis for copyright protection. Plaintiffs argue that the movies have the same vigilante "plotline" and have "nearly indistinguishable

---

[46] *Fisher v. United Feature Syndicate, Inc.*, 37 F. Supp. 2d 1213, 1218 (D. Colo. 1999) (emphasis added).

[47] *Id.*

[48] *Id.* (quoting 17 U.S.C. § 102(b) (1996)).

[49] *Madrid v. Chronicle Books*, 209 F. Supp. 2d 1227, 1241 (D. Wyo. 2002) (quoting *Feist*, 499 U.S. at 350).

[50] *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985) (finding dissimilar two works that shared a "certain gruesome similarity" and which "both . . . take their general story from the adventures of a young professional who courageously investigates, and finally exposes, the criminal organization").

[51] *Madrid*, 209 F. Supp. 2d at 1241.

[52] *Berkic*, 761 F.2d at 1293.

[53] *Fisher*, 37 F. Supp. 2d at 1218 (citations omitted).

characters."[54] But Plaintiffs do not identify particular expressions that are protectable. The three similarities between Machete[55] and Vengeance are alleged to be as follows: (1) both films are about law enforcement officers who take vengeance on a person who killed his wife and daughter, and does so by obtaining information on the streets; (2) both films end with a scene between a priest and a bad man; and (3) the lead actor in both films is Danny Trejo.[56] Plaintiffs allege that these similarities establish copyright infringement.[57] But each of these is a general description of an idea, not a particular allegation about a protected *expression* of the idea—how the priest is dressed, how he acts, what he says, for example. There is no discussion, in the Complaint or the Opposition, about protected *expressions*. Plaintiffs do not allege specific lines, costumes, scenery, or other expressions are duplicated. Instead, Plaintiffs rely on general conclusions that the Broadcasters have "copied" or "duplicated" their film.[58] The Complaint must contain factual allegations about protected expressions, not merely conclusions that the general plot ideas or characters have been duplicated. As with another case decided in this Circuit, "the similarities that Plaintiff[s] mention[] in [their] complaint and response . . . are merely ideas, and not the expression of ideas[.]"[59]

Further, while both films feature Danny Trejo as the lead actor, that is not a protectable element. Plaintiffs allege that Trejo has a distinctive look, but do not tie that allegation to a particular part of the film that make it an expression. Instead, Plaintiffs allege that Trejo's visage

---

[54] Opposition at 20.

[55] The Complaint alleges similarities only between Machete and Vengeance. With respect to Machete Kills, the Complaint only makes a conclusory allegation without supporting facts: "On or about October 2013, a sequel, titled 'Machete Kills,' was released; it is another film remarkably similar in many ways to Plaintiffs' original films." Complaint ¶ 36.

[56] *Id.* ¶ 49.

[57] *See, e.g., id.* ¶ 34 (alleging that Machete "duplicated and copied much of the Plaintiffs' original films").

[58] *Id.*

[59] *Madrid*, 209 F. Supp. 2d at 1241.

is a characteristic of *Trejo* as a person, not a characteristic of any actor he portrays. The idea for Trejo to be a lead actor and the choice of Trejo to actually play a lead vigilante actor are ideas that are not copyrightable.[60]

Moreover, the "'scenes a faire' doctrine, in general excludes from copyright protection material that is 'standard,' 'stock,' or 'common' to a particular topic, or that 'necessarily follows from a common theme or setting.'"[61] Several elements Plaintiffs identify, such as a vigilante seeking a villain, a vigilante obtaining information on the streets, and a vigilante seeking revenge or vengeance against a person who has wronged the vigilante, are elements that are "standard," "stock," or "common" to the vigilante theme or setting. The "scenes a faire" doctrine, then, illustrates why the gravamen of Plaintiffs' Complaint is unsupportable under copyright law. Plaintiffs seek protection for the alleged similarity between the two films, but the two films are of the same genre and have the same theme, which "necessarily follows" when films address the same topic. The key to copyright protection is whether there are protectable elements that have been copied.

Because Plaintiffs have not alleged that any *protectable* elements of their film have been infringed, they have failed at the first step of the abstraction-filtration-comparison test and Plaintiffs have failed to establish access by showing "striking similarity" between the films. Plaintiffs also have not established direct or third party access. Accordingly, the Complaint fails to state a claim for copyright infringement.

---

[60] *See Falotico v. WPVI-Channel 6*, Case No. Civ. A. No. 89-5175, 1989 WL 143238 (E.D. Pa. Nov. 22, 1989( (unpublished).

[61] *Madrid*, 209 F. Supp. 2d at 1242.

### Probative Similarities

The section immediately above addresses why the Complaint fails to establish similarity between the works. "Liability for copyright infringement will only attach where the Plaintiff can prove that the *protected elements* of the copyrighted material were copied."[62] Because Plaintiffs have not alleged that any *protectable* elements of their film have been infringed, they have failed to establish that there is "probative similarity" between the films.

### Vicarious Copyright Infringement

Plaintiffs argue that their claim for copyright infringement is based on "[m]ultiple legal theories," but specifically identify only "vicarious copyright infringement."[63] Vicarious copyright infringement, however, "require[s] someone to have directly infringed the copyright."[64] The Complaint does not allege that someone other than the Broadcasters has directly infringed the Plaintiffs' copyright, which is required to establish vicarious or contributory liability.[65] Accordingly, Plaintiffs have failed to state a plausible claim for vicarious copyright infringement as well.

---

[62] *Fisher*, 37 F. Supp. 2d at 1218 (emphasis added).

[63] Opposition at 12.

[64] *Id.* n.5 (quoting *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1181 (10th Cir. 2009)).

[65] *Diversey v. Schmidly*, 738 F.3d 1196, 1204 (10th Cir. 2013) ("[A] defendant can also be secondarily liable *for another's copyright infringement* under principles of vicarious and contributory liability." (emphasis added)).

**ORDER**

IT IS HEREBY ORDERED that the Motion is GRANTED. Plaintiffs' Complaint is DISMISSED.

IT IS FURTHER ORDERED that Plaintiffs are granted LEAVE TO AMEND their Complaint on or before November 21, 2016. If no amended complaint is filed by that date the Clerk shall close the case.

Dated November 2, 2016.

BY THE COURT:

David Nuffer
United States District Judge